James M. Williams, husband of plaintiff, and a resident of Asheville, was in Greensboro on 5 January, 1933, and had in his possession certain checks, to wit: one check from Pilot Life Insurance Company for $1,721.72, one from New York Life Insurance Company for $266.49, another from the same company for $266.66, and another from the National Life Insurance Company for $596.58. All of these checks were payable to James M. Williams and represented proceeds of loans on life insurance policies upon his life, in which policies his wife, the plaintiff, was beneficiary. The aggregate amount of these checks was $2,850.45. The said Williams went to the North Carolina Bank and Trust Company in Greensboro, upon which the check from the Pilot Life Insurance Company for $1,721.72 had been drawn.
The story of the transaction as related by the said Williams is substantially as follows: "I went to the bank and saw a young lady who was there in the lobby. I told her what I wanted and she directed me to Mr. E. C. McLean. I went to see Mr. McLean and told him what I wanted. I showed him the check I had, telling him I wanted to get the money for the check I had from the Pilot Life Insurance Company. . . . Mr. McLean said I would have to be identified in order to get the check cashed, and he then directed me to Mr. R.L. Clarke, who was in the bank. . . . I then showed Mr. Clarke the check I had and told him I wanted to get it cashed — the money on it. Mr. Clarke said the check was all right — the Pilot Life Insurance Company had the money there, but I would have to be identified before he could pay it. . . . I showed Mr. Clarke a letterhead with the Pisgah Lumber Company that I was an officer of, . . . and my name was on it as the president of the company. I showed him the courtesy chart of the Gulf Refining Company. . . . It had my name on it. . . . I also showed him some other checks I had. . . . I did not get that check cashed. . . . Mr. Clarke still would not cash the check. . . . I had never before this time dealt with the North Carolina Bank and Trust Company. . . . Mr. Clarke then suggested that I deposit the check. I had had it for some time. . . . I told Mr. Clarke I did not want to deposit it anywhere, that I could have *Page 739 
deposited it before that; that I wanted the money for a special purpose that I had in view — a deal I had in view to make; that I did not want to deposit it anywhere, I just wanted to get the money. . . . We kept talking about the Pilot Life Insurance Company check, and finally Mr. Clarke said he would take the check for collection, and with my name on the check and my name with the Life Insurance Company, that is, my signature, and he would see some of the officers and thought that was going to make it all right. . . . I then asked him if, since you agree to that, . . . will you take some other checks, these other checks that I have and collect along with that, and he said he would. . . . After Mr. Clarke said he would take those other three checks along with the Pilot Life Insurance check for collection, I endorsed the checks and gave them to Mr. Clarke and asked him to give me a receipt for them. . . . After I asked Mr. Clarke for a receipt he brought a writing . . . and handed it to me. I objected to it on several grounds. . . . I did not ask for a certificate of deposit. I did not know there was any such thing as a certificate of deposit. In all my dealings with banks I had not seen one. . . . When I left those checks with Mr. Clarke in the North Carolina Bank and Trust Company, . . . I told him I wanted it for a special purpose in a trade. I had a transaction I had expected to close up in Virginia when it came time to close it. I did not tell him all the details of the transaction. . . . I objected to taking that first because it required legal notice. . . . It appeared to be negotiable, and yet on its face it said it was not subject to checking. I could not make that out and Mr. Clarke said, `We will just treat that same as a receipt'; that if the whole amount was not collected that we would adjust it then, and whether it was collected or not, he would notify me and I did not use it, did not use it anywhere, but he said it was negotiable. I did not want to keep that that way. I was not to use it anywhere until he notified me of a certain whether the money was collected or not collected. Now, that is just the way I understood. I have the certificate of deposit that he gave me and I do not mind letting you see it, not a bit in the world. . . . I told Mr. Clarke I did not want it and Mr. Clarke said it would not require any notice, I could come back when the money was collected and get it any time afterwards without giving notice of any kind. . . . I took it under those conditions. . . . He told me to hold it for thirty days. I agreed to hold it for thirty days until he notified me whether it was paid or not, and if any of the checks were not paid, then we would adjust the matter according to the amount we had. . . . The bank did not notify me at all before I went to the bank on 3 March whether the four checks had been collected by them or whether they had not been collected by them. . . . I asked Mr. Clarke to make the *Page 740 
receipt in the name of Mrs. Lillian E. Williams. . . . After Mr. Clarke left me and took those four checks with him and came back to me and handed me a paper-writing, Mr. Clarke agreed with me that it should be treated as a receipt. . . . I did not make any attempt to get the money out of the bank or to realize on the certificate of deposit from the time I left the checks in the bank until 3 March."
On 10 January, 1933, James M. Williams, as agent for his wife, the plaintiff, wrote a letter to the defendant bank, in reply to a letter from said bank to the plaintiff, "thanking her for the certificates of deposit account you have opened with us." This letter stated: "While the face of the paper you both refer to reads certificate of deposit, it is really in fact a receipt offered to me and accepted by me as such for checks left with you for collection, totaling the amount $2,851.45. . . . I presented this check to you for payment. You refused payment, saying that you did not know me. . . . I endorsed the checks and handed them to you, asking for a receipt. You handed me what you now call a certificate of deposit. I demurred, saying this was negotiable, and was told it should be regarded as a receipt, and that I should so treat and hold it, subject to the collection of all the checks, which I agreed to do." Williams testified that during the period from 5 January until 3 March that he did not have any direct notice that the checks were all cashed, and that he did not write the bank as to whether the checks had been collected. On 3 March Williams presented himself to the bank for the money.
It was admitted that all of the checks "were duly collected by said North Carolina Bank and Trust Company and augmented the assets of said bank."
It was alleged that on the morning of 3 March, 1933, the plaintiff, through her agent, J. M. Williams, demanded payment in full of the proceeds of said checks, and that payment was refused. The defendant admitted in the answer that upon the opening for business on 3 March, 1933, the North Carolina Bank and Trust Company limited withdrawals by any depositor to five per cent of depositor's balance as shown by the books at the close of business on the previous day.
On 20 May, 1933, the North Carolina Bank and Trust Company, together with all of its assets, passed into the hands of the defendant Gurney P. Hood, Commissioner of Banks, for purpose of liquidation according to law. The plaintiff filed a claim for preference and the preference was denied. Thereupon this suit was brought to recover the proceeds of said checks as a preference. A motion of nonsuit was made by the defendant, and such motion was granted by the trial judge. From said judgment of nonsuit the plaintiff appealed. *Page 741 
Was there sufficient evidence of statutory preference to be submitted to the jury?
C. S., 218 (c) (14), prescribes the order of preference in the distribution of assets of insolvent banks. Subsection 4 thereof in part specifies as a preference "amounts due on collections made and unremitted for or for which final actual payment has not been made by the bank."
The evidence offered in behalf of plaintiff tended to show that the checks were deposited in the bank for collection, and a receipt demanded. There was also evidence tending to show that it was agreed between the parties that the bank was to have thirty days in which to make the collection. It seems that a certificate of deposit was given the plaintiff at the time the bank took the checks. The plaintiff, however, insists that the evidence showed that this so-called certificate of deposit was intended as a receipt for the reason that the bank had positively refused to cash the checks, and it would hardly be supposed that the money would be put to the plaintiff's credit at the very instant the bank was declining to pay it to Williams. If a jury should find, upon proper instructions by the trial judge, that the plaintiff, through her agent, deposited these checks for collection, and they were so accepted by the bank at the time, and should further find that although a certificate of deposit was issued, it was understood and agreed between the parties that this should be treated as a receipt and to be held as such for a period of thirty days in order to give the bank an opportunity to collect the checks and notify the plaintiff of such collection when made, then upon such finding the plaintiff would be entitled to a statutory preference.
The plaintiff insisted that there was sufficient evidence of a special deposit for a special purpose warranting the application of the trust fund theory of preference. This Court, however, does not concur in this view upon the evidence appearing in the record.
The defendant relied upon the case of Morecock v. Hood, 202 N.C. 321,162 S.E. 730. This case deals with an interpretation of the proviso in section 218 (c) (14). The reasoning and scope of the Morecock case, supra, is not decisive of the question presented by the present appeal. TheMorecock case did not involve a collection at all, but undertook to deal with a series of transactions by means of which a depositor was undertaking to withdraw his own money from a bank.
Reversed. *Page 742